IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00848-NRN

THE ESTATE OF EIRA SAENZ and
MARIA DE REFUGIO CORRAL, individually and as Personal Representative of The
Estate of Eira Saenz,

Plaintiffs,

v.

JOHN P. BITTERMAN, Adams County Police Department, in his individual capacity;
and ADAMS COUNTY, COLORADO,

Defendants.

---

**ORDER ON
PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT (Dkt. #44)**

---

**N. REID NEUREITER
United State Magistrate Judge**

This case is before the Court for all purposes upon consent of the Parties and

referral by Chief Judge Brimmer, dated May 12, 2020. Dkt. ##17 & 18.

Currently before the Court is Plaintiffs' Motion for Partial Summary Judgment

against Defendant John Bitterman. Dkt. #44. Plaintiffs seek judgment in their favor on

the issue of liability on their claim of negligence per se. Plaintiffs argue that the

undisputed evidence shows that Defendant Bitterman, who was a law enforcement

officer driving an unmarked patrol vehicle, caused the automobile accident that is the

basis for this case by failing to stop at a stop sign in violation of Colorado traffic laws.

According to Plaintiffs, Defendant Bitterman's violation of a statute intended to protect

the public constitutes negligence per se. Defendant Bitterman, who is a commander

with the Adams County Sheriff's Office, insists that there are disputed issues of fact as to whether his going through the stop sign without stopping was a violation of Colorado law. This is because, Bitterman argues, there is a fact issue as to whether the emergency lights on his vehicle were on. If the emergency lights were on, then he arguably had the right of way in going through the intersection against the stop sign.

The Court heard argument on October 15, 2020. On October 29, 2020, I requested supplemental briefing on the issue of whether the doctrine of issue preclusion applies to the factual findings necessary to the administrative disciplinary action taken against Defendant Bitterman. The Parties simultaneously filed supplemental briefs on that question on November 6, 2020. *See* Dkt. ##69 & 70. The Court has taken judicial notice of the Court's file, all relevant briefing, considered the applicable Federal Rules of Civil Procedure and case law, and, for the reasons outlined below, will **GRANT** Plaintiffs' Motion for Partial Summary Judgment on the claim of negligence per se.

## BACKGROUND

On the morning of March 28, 2019, Defendant Bitterman, an Adams County Sheriff's Office commander, while allegedly responding to an emergency call, failed to stop at a stop sign and drove through the intersection of Highway 79 and East 88th Avenue in Bennett, Colorado. At the same time, Plaintiff Maria De Refugio Corral was driving through the intersection with her mother, Eira Saenz Sandoval, as a passenger. Plaintiffs' car hit the passenger side of Defendant Bitterman's vehicle. Eira Saenz Sandoval died as a result of the injuries she suffered in the accident. Ms. De Refugio Corral was seriously injured. At a criminal trial, Defendant Bitterman was found guilty of careless driving resulting in death and careless driving resulting in serious bodily injury.

There was a subsequent Internal Affairs investigation by the Adams County Sheriff's Office that found Defendant Bitterman responsible for the accident, necessarily finding that his emergency lights were not activated at the time of the crash. The Department imposed discipline on Defendant Bitterman, which he did not appeal.

Plaintiffs filed this lawsuit asserting five claims for relief: negligence against Defendant Bitterman (Counts One and Two), violation of 42 U.S.C. § 1983 against Defendant Bitterman (Count Three), and vicarious liability against Adams County (Counts Four and Five). Dkt. #1.

In the instant motion for partial summary judgment, Plaintiffs seek a ruling on liability in their favor and against Defendant Bitterman on the claim of negligence per se.

## LEGAL STANDARDS

### I.     Summary Judgment

A motion for summary judgment serves the purpose of testing whether there is a need for trial. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003), *White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Pursuant to Rule 56, summary judgment is appropriate when the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's determination depends on whether there are any genuine, factual issues that can be "properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing a factual basis for its motion. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). "The moving party may carry

its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry it burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). A judge need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

Once the movant properly supports a motion for summary judgment, the non-moving party "may not rest on mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Unsupported and/or conclusory allegations do not establish an issue of fact sufficient to defeat summary judgment. *E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1037 (10th Cir. 2011). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)). As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.*

As to the quantum of proof necessary to create a genuine issue of fact sufficient to oppose a motion for summary judgment, summary judgment will not lie "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering whether there is sufficient evidence favoring the nonmoving party, if

that "evidence is merely colorable," or is not "significantly probative," then summary judgment may be granted. *Id.* at 249.

The judge's function at the summary judgment stage "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* The standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict. "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Id.* at 250-251. Similarly, if reasonable minds could differ on the import of the evidence, summary judgment should not be granted. The Supreme Court has stated the inquiry as the following: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "The mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Id.* at 252.

Importantly, in ruling on a motion for summary judgment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (citing *Anderson,* 477 U.S. at 255*). See also Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion."). The Court must resolve all doubts in the nonmoving party's favor and construe all evidence in the light most favorable to the nonmoving

party. *Hunt*, 526 U.S. at 550-55. Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380-81.

## II.    Negligence Per Se

In Colorado, to establish a common law negligence claim, "the plaintiff must show that the defendant owed the plaintiff a legal duty to conform to a standard of care, the defendant breached that duty, the plaintiff suffered injury, and there is a causal relationship between the breach and the injury." *Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009) (citing *Scott v. Matlack, Inc.,* 39 P.3d 1160, 1166 (Colo. 2002)).

> Negligence per se occurs when the defendant violates a statute adopted for the public's safety and the violation proximately causes the plaintiff's injury. To recover, the plaintiff must also show that the statute was intended to protect against the type of injury he or she suffered, and that the plaintiff is a member of the group of persons the statute was intended to protect. If the statute applies to the defendant's actions, the statute conclusively establishes the defendant's standard of care, and violation of the statute is a breach of his duty.

*Id.* (citations omitted).

"Generally, violating a safety statute that regulates roadway usage is evidence of negligence." *Winkler v. Shaffer*, 356 P.3d 1020, 1023 (Colo. App. 2015). *See also Silva*, 223 P.3d at 135–36 (holding that violation of careless driving statute, Colo. Rev. Stat. § 42-4-1402, constitutes negligence *per se*); *Kelley v. Holmes*, 470 P.2d 590, 591 (Colo. App. 1970) (noting that "the violation of a traffic ordinance constitutes negligence *per se*"). Indeed, under the Colorado Pattern Jury Instruction on negligence per se, the jury is instructed specifically that a violation of a relevant statute "constitutes negligence." CJI-Civ.4th 9:14 "Negligence Per Se – Violation of Statute or Ordinance." *See also*

*Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002) ("If the statute applies to the defendant's actions, then the statute conclusively establishes the defendant's standard of care and violation of the statute is a breach of his duty.").

Traffic ordinances generally are statutes adopted for the public's safety. They are intended to protect against injuries from automobile collisions; fellow drivers are among those persons the statutes are intended to protect. Therefore, violation of a traffic statute may serve as the basis of a negligence per se determination. *Bullock v. Wayne*, 623 F. Supp. 2d 1247, 1252 (D. Colo. 2009).

In support of their negligence per se claim, Plaintiffs rely on Colo. Rev. Stat. § 42-4-703(3), which addresses what vehicle has the right of way at a stop sign. It provides as follows:

> Except when directed to proceed by a police officer, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk or on the near side of the intersection, or if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time when such driver is moving across or within the intersection or junction of roadways.

*Id.* Violation of this statute may be a basis for a defendant to be held negligent per se. *Bullock*, 623 F. Supp. 2d at 1252.

However, Colorado law also provides an exception to this provision for law enforcement officers who are responding to an emergency call. A law enforcement officer, when responding to an emergency call, is permitted to proceed past a stop sign, "but only after slowing down as may be necessary for safe operation." *See* Colo. Rev. Stat. § 42-4-108(2)(b) (titled "Public Officers to obey provisions—exceptions for

emergency vehicles"). This exception to the stop sign law only applies where the vehicle is "making use of audible or visual signals." *Id.* § 42-4-108(3). The term "visual signals" here means the emergency vehicle's emergency lights. As an exception to the exception, Colorado law also provides that nothing in the exception statute is to relieve the driver of the emergency vehicle "from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of such driver's reckless disregard for the safety of others." *Id.* § 42-4-108(4). In addition, Colo. Rev. Stat. § 24-4-108(3), in conjunction with Colo. Rev. Stat. § 24-10-106, provides civil immunity for officers who are responding to an emergency with their emergency lights engaged.

## PRELIMINARY ISSUES

### I.     The Dispositive Factual Question

It is undisputed that Defendant Bitterman went through the stop sign at the intersection in question without stopping and that Plaintiffs' vehicle crashed into him. *See* Plaintiff's Undisputed Facts ("PUF"), Dkt. #44, ¶ 7, and Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, Dkt. #58 at 3. It is also undisputed (based on expert testimony from the "black box" in vehicle) that Defendant Bitterman slowed his vehicle prior to entering the intersection, and then accelerated through. *See* PUF ¶ 9 and Dkt. #58 at 3. In the context of this case, the bottom line from the statutory provisions cited above is that *if* Defendant Bitterman was responding to an emergency ***and*** had his emergency lights activated as he approached and went through the intersection, then there is at least an argument that he did not violate the stop sign law and is entitled to civil immunity from suit. At oral argument, all parties agreed on these

points. The question for purposes of this motion is whether there is any genuine issue of material fact on these two issues. If a reasonable jury could conclude that Defendant Bitterman was responding to an emergency ***and*** his emergency lights were activated, then summary judgment should not be granted. On the other hand, if there is no genuine issue of fact that Defendant Bitterman's emergency lights were off when he entered the intersection, then partial summary judgment should enter in favor of Plaintiffs.

## II.    Admissibility of Defendant Bitterman's Criminal Conviction

First, Defendant Bitterman's conviction for careless driving is not admissible to show liability in this civil case. In normal circumstances, a fully litigated criminal conviction would collaterally estop Defendant Bitterman from challenging in this civil case what was actually and necessarily decided in the criminal case. This is the doctrine of issue preclusion. *See Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001) (explaining that collateral estoppel "bars relitigation of an issue if (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted was a party to or in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding"). However, when it comes to traffic violations, Colorado law precludes admission of evidence of a criminal traffic conviction for any reason, including issue preclusion. *See* Colo. Rev. Stat. § 42-4-1713; *Bullock*, 623 F. Supp. 2d at 1254 (holding this provision to be a substantive rule

applicable to a diversity suit in federal court, and barring evidence of a conviction on failure-to-yield as basis for issue preclusion on question of driver's violation of statute).

Thus, even though there was a full criminal trial that addressed the question of whether Defendant Bitterman violated Colorado's traffic laws by entering the intersection without having his emergency lights activated, and even though he was convicted of the offense charged, that criminal conviction has no preclusive effect in this case and cannot even be considered as evidence.

### III.     Whether Commander Bitterman was Responding to an Emergency

On the issue of the emergency call, there is admissible evidence, in the form of sworn testimony and a memorandum from Commander Karl Smalley that "[a]t the time of the accident, there was an active call of a deputy needing assistance in the Green Valley Ranch area." Dkt. #45-1 at 1. Viewing the evidence in the light most favorable to Defendant Bitterman, a jury could conclude he was responding to an emergency. Therefore, assuming that Defendant Bitterman was responding to an emergency call, the dispositive issue for purposes of summary judgment is whether he had activated the emergency lights on his unmarked SUV before entering the intersection.

### IV.     Plaintiffs' Evidence in Support of Summary Judgment

In support of their position that it is undisputed that Defendant entered the intersection in violation of Colorado law (by not having his lights on), Plaintiffs point to (1) eyewitness testimony that the Defendant Bitterman's lights were not activated; (2) the unrebutted conclusion of a crash investigation by the Colorado State Patrol that Defendant Bitterman caused the crash by entering the intersection without his lights activated; and (3) the conclusions of the disciplinary proceeding which relied on the

Colorado State Patrol crash investigation to find Defendant Bitterman had violated state law by entering the intersection without his lights activated.

### A.    Eyewitness Testimony

Plaintiff Maria Corral Saenz testified at the criminal trial that, prior to the crash, she had not heard any sirens and "had not seen any flashing lights at any point." She did not even know that it was a police car that was involved. Dkt. #44-1 at 4–5 (Trial Transcript). A third-party witness to the crash testified that prior to the accident he saw at Defendant Bitterman's vehicle as it was approaching the intersection but did not notice anything to indicate Defendant Bitterman's vehicle was a police vehicle, such as lights flashing. *Id.* at 16–17, 20, & 23. Defendant Bitterman himself had no memory of the crash and could not offer his recollection of whether his lights were on before the accident. Dkt. #45-1 at 2.

### B.    Colorado State Patrol Crash Investigation

Colorado State Patrol specialty accident reconstruction/crash investigator, Trent Waters, investigated the crash. *See* Dkt. #44-1 at 37–50. Trooper Waters had 23 years of experience as a Colorado State Trooper, extensive experience in crash investigation, was an adjunct instructor at the training academy for the Colorado State Patrol, and had investigated more than 1,350 vehicle accidents and 220 fatal crashes over the course of his career. *Id.* at 38–42.

Trooper Waters, reviewing the data from the airbag control module, determined that five seconds before the crash, Defendant Bitterman's vehicle was traveling at 47.8 miles per hour, decelerated to 29.5 miles per hour, and then started to accelerate again, up to 34.1 miles per hour at the time of impact. Dkt. #44-2 at 5–6. Defendant

Bitterman's acceleration before the crash was at "one hundred percent throttle" indicating the pedal was all the way to the floor. *Id.*

Trooper Waters' opinion was that the cause of the crash was "Commander Bitterman failing to stop for the stop sign, accelerating into the intersection without active emergency equipment, lighting or siren, present." *Id.* at 7.

There was evidence the emergency lights were active *after* the crash. In Trooper Waters' opinion, based on the damage to the lighting switch (bent upwards), the fact that Defendant Bitterman had not been belted at the time of the crash, and other damage to the vehicle (including the fact that the mobile data computer was bent upwards), was that the emergency light toggle switch was activated when Defendant Bitterman's body contacted the console due to the collision force. *See* Dkt. #62-1 at 5–7. While there was no "scientific proof," such as a black box recorder device, that would demonstrate conclusively that the emergency lights were off just prior to the collision, *id.* at 8–9, Trooper Waters nevertheless concluded the lights were off when Defendant Bitterman's vehicle entered the intersection based on the witness statements and the damage to the interior of the vehicle: "Q:  So you're saying it's not possible that someone could have intentionally turned the lights on before the impact? A:  Not in this collision, based on witness accounts, no." *Id.* at 7.

Investigator Waters explained the fact that the lights were on after the accident based on the damage to the console caused by the movement of Defendant Bitterman's body from the force of the collision:

> Q:      So your opinion about whether they're on or off is reliant solely on the witnesses who were paying attention prior to the crash.

> A:      Yes, ma'am. And then the – more significantly, Mr.
> Gutierrez's statement of describing a brown SUV, not a police car
> with lights. And then, after the crash, he sees it over in the field with
> its lights on, which is supported by the kinematic movement of the
> occupant due to the crash interacting with the light switch, causing
> them to be on afterwards not prior.
>
> Q:      And you used a big word there, kinematic movement, that's,
> basically, just your opinion about the way a body is supposed to
> move in a crash.
>
> A:      It's my opinion, based on the laws of motion and physics.
> But, yes, when a vehicle gets struck and you're not restrained by a
> seatbelt, you're going to move based on that energy.

*Id.* at 9, 9–15.

In opposition to Plaintiffs' Motion for Summary Judgment, Defendant Bitterman offered no contrary expert report rebutting Trooper Waters' conclusion or affirmatively opining that the emergency lights were on prior to the crash. Defendant Bitterman's opposition brief cites *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 977 (10th Cir. 2018), for the proposition that an expert's conclusory testimony is not enough to preclude summary judgment. According to Defendant Bitterman, "[i]t follows, then, that such testimony, standing along, should similarly not be enough to warrant summary judgment either." Dkt. #58 at 8. But the expert opinion that was discounted in the *Roberts* case is nothing like the expert opinion here. In *Roberts*, the expert opinion related to whether thin snow and rocks were an inherent risk of skiing. The expert's opinion on that point was "nothing more than an unsupported and conclusory statement," lacking any analysis, which the Court held insufficient to defeat summary judgment. 844 F.3d at 977. In this case, by contrast, the expert's opinion that the emergency lights were not activated was based on the testimony of two eye-witnesses and an examination of the interior of the unmarked vehicle to explain how the lights may have been activated during the collision itself based on collision forces. There was

13

nothing "unsupported" or "conclusory" about this testimony. As presented to this Court on summary judgment, it stands unrebutted.

### C.    Internal Affairs Report and Administrative Disciplinary Proceeding

After the accident and resulting death and injury, the Adams County Sheriff's Office conducted its own disciplinary proceeding against Defendant Bitterman. That disciplinary proceeding raised three charges against Defendant Bitterman: (1) Failure to adhere to standards of conduct; (2) Failure to conform to law (with conviction for a violation of any law being "prima facie" evidence of a violation); and (3) Failure to operate an official vehicle in a careful and prudent manner and obey all laws and official orders pertaining to such operation. Dkt. ##45-1 & 45-2. The allegations were sustained based, in part, on the report by Trooper Waters which had found, among other things, that Defendant Bitterman's emergency lights were not activated when he entered the intersection prior to the crash. *See* Dkt. #45-1 (Memorandum dated August 18, 2019 from Commander Karl Smalley to Chief Mark Toth):

> The crash was investigated by Technician Waters with the Colorado State Patrol Vehicular Crimes Unit. The Event Data Recorder indicated that Commander Bitterman's speed was 34.1 MPH at impact, accelerating into the intersection. Technician Waters' presentation indicates that Commander Bitterman did not have his lights and siren activated prior to impact. The impact apparently knocked the emergency light switch to the on position but that is not known for sure.
>
> Based on Technician Waters' training and experience in the field of crash reconstruction and investigation and the forgoing facts contained in this file, the proximate cause of this crash and the subsequent death sustained by Eira Saenz Sandoval and the serious bodily injury sustained by Maria Del Refugio Corral Saenz was the driver of the Ford, Commander John Bitterman, likely being distracted by an ongoing in-progress call and while responding to the call, failed to stop at a clearly posted stop sign. [sic]

Dkt. #45-1 at 2–3.

As result of the sustained allegations, Defendant Bitterman was recommended to be disciplined with a period of leave without pay. *Id.* at 3. In a Personnel Order dated December 19, 2019, relating to the Internal Affairs investigation, Defendant Bitterman's Commander, Division Chief Mark Toth, sustained all three allegations, and imposed a period of suspension without pay. *See* Dkt. #45-2 (Personnel Order 2019-186 re: Pre/Final Hearing, Internal Affairs Investigation #2019-0019). Defendant Bitterman elected not to appeal the Sheriff's adverse determination and discipline imposed. Necessary to the sustaining of the allegations against Defendant Bitterman was the finding that he had entered the intersection without stopping at the stop sign and without his emergency lights activated.

## V.   Defendant Bitterman's Position

Defendant Bitterman relies on two points to support his position that there is a genuine issue of fact as to whether the emergency lights were activated when he entered the intersection.

First, Defendant Bitterman relies on his own testimony from his criminal trial that it was his pattern and practice, when responding to a call for service, "generally" to engage ***both*** his lights and sirens. Dkt. #58-1 at 12. Defendant Bitterman testified that if there was something coming over the radio that he needed to hear, he would, at times, turn his siren off. *Id.* In response to Plaintiffs' Motion for Summary Judgment, Defendant Bitterman did not provide any more detail regarding his alleged habit of turning on his lights, by, for example, submitting an affidavit.

Second, although not explicitly stated, Defendant Bitterman implies that because the lights were on ***after*** the accident, it could be inferred that they were on ***before*** the

accident too. As Defendant Bitterman argues in his opposition, "Because both third-party fact witnesses testified that they eventually did observe the emergency lights as they got closer to the scene of the accident, combined with Defendant's pattern and practice of utilizing these lights when responding to calls involving an officer in distress, a genuine dispute of fact exists as to the material issue of immunity and summary judgment should be denied on this basis." Dkt. #58 at 9.[1]

**ANALYSIS**

Here, Plaintiffs have presented two eyewitnesses (including one of the crash victims) who say they saw Defendant Bitterman's vehicle approaching the intersection without any indication that it was a law enforcement vehicle, such as a lights or a siren. Because it was an unmarked car without any outward indication it was a Sheriff's Department vehicle, without lights or a siren, no one would have expected it to just go through the stop sign without stopping first.

Also presented is the unrebutted expert testimony of a Colorado State Patrol crash investigator that the lights were not on prior to the accident. This is coupled with the conclusion of the disciplinary investigation by the Sheriff's Internal Affairs Department which found that Defendant Bitterman had violated state law by crossing into the intersection without his lights activated. Defendant Bitterman chose not to challenge the disciplinary findings against him that he had violated the law by going through intersection without his lights activated.

---

[1] Defendant Bitterman does make other arguments about potential alternative causes of the accident, including Ms. Corral not wearing corrective lenses that she only wears at night, and the alleged tint on the windows of her car. I do not find these issues to be anything other than pure speculation and would not be sufficient to create a genuine issue of fact for a jury.

While Defendant Bitterman has not objected to the admissibility of the memorandum reflecting the Review/Recommendation of the Internal Affairs Investigation (Dkt. #45-1), I do note that it is technically hearsay, being an out of court statement offered for the truth of its contents. Nevertheless, I find that the memorandum is admissible under the Public Records exception to the hearsay rule, Fed. R. Evid. 803(8)(A)(iii). *See Perrin v. Anderson*, 784 F.2d 1040, 1047 (10th Cir. 1986) (in action brought by estate of person killed by police, affirming admission into evidence under Rule 803(8) of shooting review board report concluding that officer acted within guidelines set forth in policies and procedures manual). These were factual findings from a legally authorized investigation, being submitted in evidence in a civil case, and therefore qualify as an exception to the hearsay rule. *See In re Air Crash Disaster at Stapleton International Airport*, 720 F. Supp. 1493, 1497 (D. Colo. 1987) (explaining that Rule 803(8) attaches an assumption of trustworthiness to a government investigation as a whole). To the extent that the memorandum contains hearsay within hearsay, the statements of the eyewitnesses and the Colorado State Patrol Investigator have been separately considered based on their admissible sworn trial testimony. There are no circumstances that would indicate lack of trustworthiness of the memorandum. *See* Fed. R. Evid. 803(8)(B). *See also Wilson v. Beebe*, 770 F.2d 578, 590 (6th Cir. 1985) (finding no abuse of discretion in admitting into evidence under Rule 803(8) a memorandum written by police captain which concluded subordinate had acted contrary to department training in weapons use and handling).

In the face of this evidence, Defendant Bitterman's only evidence to create a disputed issue of fact on the emergency light issue is his trial testimony that it "usually"

was his habit to turn on both his lights and siren when responding to an emergency. "Generally" it was his practice to activate both lights and sirens, but sometimes he would turn his siren off if something was coming over the radio. Dkt. #62-1 at 12. Defendant Bitterman has no recollection of the day itself because of the head injury he suffered in the crash. Dkt. #45-1. As to the number of times he had responded to an emergency calls over the three years he was a Commander, Defendant Bitterman testified "at least five or six times." Dkt. #62-1 at 10.

Plaintiffs challenge this evidence as inadmissible because it does not meet the standard for habit evidence under Fed. R. Evid. 406. Under Rule 406, "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." Fed. R. Evid. 406.

The Tenth Circuit has characterized habit as a "semi-automatic act" and "'the very nature of habit evidence is that it is done reflexively.'" *United States v. Oldbear*, 568 F.3d 814, 822 (10th Cir. 2009) (quoting *United States v. Trautman*, 814 F.2d 1428, 1455 (10th Cir. 2006)). To prove an act is sufficiently habitual to justify admission into evidence, the Tenth Circuit requires the proponent "to offer evidence of numerous, consistent occurrences of the act." *Id.* This is consistent with the logic behind the rule and the psychological definition of habit: that "frequency is essential to showing that the conduct in question is the product of a conditioned response to a specific stimulus, rather than some singular act in response to unique circumstances." 23 Charles Alan Wright & Victor Gold, Federal Practice and Procedure § 5273 (2d ed.) (2018).

To establish specific conduct as a habit, a party must produce evidence establishing a "degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988). "It has been repeatedly stated that habit evidence is never to be lightly established, and evidence of examples, for purposes of establishing such habit, is to be carefully scrutinized before admission." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 511 (4th Cir. 1977).

The Tenth Circuit has previously stated that five or six instances of doing something is not sufficient to establish the existence of a habit. *See Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1232 (10th Cir. 2001) (six incidents of conduct during seizure of child pornography was not enough to establish the existence of a habit); *Perrin v. Anderson*, 784 F.2d 1040, 1046 (10th Cir. 1986) (explaining that "[f]ive incidents ordinarily would be insufficient to establish the existence of a habit," but holding that district court properly admitted defendant's habit of reacting with extreme violence to any contact with a uniformed police officer where there was an offer of proof from eight officers concerning numerous different incidents); *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985) (holding that four instances of conduct of walking into other people's houses while intoxicated over a period of eight years is insufficient to establish habit).

This frequency requirement is consistent with the principle that courts "reject the evidence if the putative habit is not sufficiently regular or uniform." 1 McCormick On Evid. § 195 (8th ed.). As the Federal Practice and Procedure treatise points out, most

cases concur that a mere "handful" of instances of specific conduct is not adequate to establish a habit for evidentiary purposes. 23 <u>Federal Practice and Procedure</u> § 5273. *See, e.g, Thompson v. Boggs*, 33 F.3d 847, 854-55 (7th Cir. 1994) (five unsubstantiated incidents of officer's use of excessive force without any evidence of total number of contacts or number of arrests performed not sufficient evidence of habit); *United States Football League v. Nat'l Football League*, 842 F.2d 1335, 1373 (2d Cir. 1988) (three of four instances of disregard of antitrust advice over many years do not show a pattern of behavior); *G.M. Brod & Co. v. United States Home Corp.*, 759 F.2d 1526, 1532-33 (11th Cir. 1985) (testimony of subcontractor that defendant company breached five contracts with him in a year and a half and breached contracts with others was erroneously admitted to show company's habitual breaching of contracts with small businesses); *Reyes v. Missouri Pac. Railway Co.*, 589 F.2d 791, 795 (5th Cir. 1979) (four convictions for public intoxication in three and one-half years insufficient to prove habit).

I find that, under Tenth Circuit precedent, five or six instances of responding to emergencies over a three-year period, where Defendant Bitterman "usually" or "generally" turned on his emergency lights, is not sufficient evidence of habit to be admissible to show that the lights were activated prior to the collision. At most, Defendant Bitterman had occasion to respond to an emergency once every six months during this three-year period and his testimony was merely that he "usually" turned on his emergency lights. He does not say whether this was an automatic reaction, and provides no explanation of the times when he did not turn on his lights. Defendant Bitterman has not offered evidence of the "numerous, consistent occurrences of the act"

showing that turning on his lights when responding to an emergency call was a "semi-automatic act," done "reflexively." *See Oldbear*, 568 F.3d at 822.

In sum, Defendant Bitterman's "usual" response to a handful of emergency calls over a three-year period is not enough to establish evidence of a habit under Rule 406, especially in light of his failure to identify the nature of the other calls to which he responded and did not activate his lights. *See Hasan v. AIG Prop. Cas. Co.,* 935 F.3d 1092, 1100-01 (10th Cir. 2019) (citing *Simplex*, 847 F.2d at 1294, for the proposition that the "Rule 406 inquiry . . . necessitates some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place").

Considering only admissible evidence, the Court is therefore presented with (1) the testimony of two eye-witnesses that Defendant Bitterman's emergency lights were off prior to the collision; (2) the conclusion of an expert State Patrol accident investigator that the emergency lights were off prior to the collision and a rational explanation as to why they were on after the collision; (3) the Internal Affairs memorandum of Adams County Sheriff's Department concluding that the emergency lights were off prior to the collision; and (4) the fact that Defendant Bitterman accepted without appealing the discipline meted out for having caused the crash.

By contrast, there is little more than a scintilla of evidence supporting the conclusion that the emergency lights were activated prior to the accident. In sum, Defendant Bitterman has failed to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Viewing the evidentiary record as a whole in the light most favorable to Defendant Bitterman, no rational trier of fact could

find in his favor on the issue of whether his emergency lights were activated prior to the crash.

For these reasons, I conclude there is no genuine issue of material fact on the question of whether Defendant Bitterman violated state law in causing the accident by entering the intersection without his emergency lights activated. [2] Partial summary judgment is therefore granted in favor of Plaintiffs and against Defendant Bitterman on the claim of negligence per se.

---

[2] At my request, the Parties briefed the issue of the preclusive effect of the conclusions of the Internal Affairs investigation and the internal discipline imposed on Defendant Bitterman. Issue preclusion bars re-litigation of an issue if: 1) the issue decided is identical to an issue actually litigated and necessarily decided in the prior proceeding, 2) the party against whom estoppel was sought was a party to the prior proceeding, 3) there was a final judgment on the merits in the prior proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999). In Colorado, issue preclusion applies to administrative proceedings in which the agency is acting in a quasi-judicial role. *A-1 Auto Repair & Detail, Inc. v. Bilunas-Hardy*, 93 P.3d 598, 601 (Colo. App. 2004). "Quasi-judicial action . . . generally involves a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing for the purpose of resolving the particular interests in question." *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 625, (Colo. 1988). The Parties disagree as to whether the disciplinary proceeding against Defendant Bitterman qualifies as the type of administrative proceeding that should have preclusive effect. Defendant Bitterman argues that the discipline imposed was more ministerial than judicial in nature. Defendant Bitterman also argues that he did not have the same incentive to challenge the adverse findings in the disciplinary proceeding as he does here, because he was only likely to lose two days' pay through suspension, whereas in this case, he is being sued for hundreds of thousands of dollars. Defendant Bitterman also asserts that because his employers at the Adams County Sheriff's Office were the final decision-makers, they were not the "neutral and detached" judges that would be necessary to make the disciplinary decision preclusive. While there are interesting arguments on both sides on this question, ultimately, for reasons outlined above, I am granting summary judgment on a basis other than issue preclusion and I do not find it necessary to come to any definitive conclusion about the preclusive effect of the disciplinary proceeding by the Adams County Sheriff's Office.

**CONCLUSION**

Plaintiffs' Partial Motion for Summary Judgment on the question of liability for negligence per se is **GRANTED**.

Date: November 17, 2020                                By the Court:

N. Reid Neureiter
United States Magistrate Judge